**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0579. WESTBROOK v. THE STATE.                    DO-022 C

DOYLE, Presiding Judge.

Following a jury trial, Silas Redgize Westbrook, Jr., was convicted of armed robbery, violation of the Georgia Street Gang Terrorism and Prevention Act ("GSGTPA"),[1] and possession of a firearm during the commission of a felony. He appeals from the denial of his motion for new trial, contending that the trial court erred by admitting evidence of his prior guilty plea to armed robbery in 2000 under OCGA § 24-4-404 (b). For the reasons that follow, we affirm.

Construed in favor of the verdict,[2] the evidence shows that on November 14, 2014, Tometrius King robbed a Brothers convenience store at approximately 8:00

---

[1] OCGA § 16-15-1 et seq.

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

a.m.[3] As described by store employees, King entered the store, pointed a gun at one of the employees, and demanded money, saying, "give it up, bitch." The employee gave him the money from the cash drawer, and King fled. As King ran out of the store, another store worker grabbed a machete and chased King as he fled the scene. King turned and shot at the worker, who immediately laid on the ground to avoid being hit. A video surveillance system recorded the robbery and shooting, and it captured a white sedan driving by at the time of the robbery.

The same day, November 14, 2014, shortly after 8:30 a.m., the same man robbed a nearby Mini Mart convenience store at gunpoint. Video cameras captured the same white car, which had the make and model badges removed, tinted windows, and distinctive tail lights and chrome rims. In both robberies, the car appeared to park strategically in nearby locations to avoid detection and aid in quick departure.

In the ensuing investigation, police were able to determine that the white car used in both robberies was registered to Westbrook's wife. Police set up a surveillance operation at the location where the car was parked, and shortly thereafter, Westbrook approached the vehicle. At this point, five days after the robberies,

---

[3] King pleaded guilty to the crimes arising from the robbery.

Westbrook was interviewed by police and agreed to talk after waiving his *Miranda*[4] rights.

In the interview, Westbrook first denied that he knew King, but then admitted that he knew King as his nephew. On the morning of the robberies, he agreed to give King a ride to a store, and after giving conflicting accounts, he admitted that he agreed to give King a ride to a second location soon after hearing gunshots. Police also interviewed King, who implicated Westbrook in the robberies, explaining that Westbrook was recruiting him into the Gangster Disciples street gang. King said that the robberies were a way of gaining membership and status in the organization.

Based on these events, King and Westbrook were charged in a multi-count indictment alleging, in relevant part, that Westbrook committed two counts of armed robbery, one count of violating the GSGTPA, and two counts of possessing a firearm during the commission of a felony. King ultimately pleaded guilty to the robberies, and in exchange for a favorable sentencing request from the State, he testified against Westbrook in a jury trial. The jury found Westbrook guilty of four of the counts, acquitting him of one armed robbery (the Brothers store) and the corresponding firearm count. After his motion for new trial was denied, Westbrook filed this appeal.

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

Westbrook contends that the trial court abused its discretion by admitting evidence under OCGA § 24-4-404 (b) that he pleaded guilty in 2000 to an armed robbery that he committed in 1999 when he was 16.[5] We disagree.

Under OCGA § 24-4-404 (b),

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The party offering evidence under OCGA § 24-4-404 (b) must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.[6]

---

[5] The State provided the appropriate pre-trial notice of its intention to introduce the evidence. See OCGA § 24-4-404 (b) ("The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial. . . .").

[6] *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018).

4

"A trial court's decision to admit other acts evidence under OCGA § 24-4-404 (b) will be overturned [on direct appeal] only where this is a clear abuse of discretion."[7]

Here, the State offered the 404 (b) evidence at issue via testimony from an officer who investigated and arrested Westbrook for the 1999 robbery and through a certified copy of his conviction pursuant to a guilty plea. This evidence showed that in the 1999 offense, Westbrook stole money at gunpoint from a convenience store. He also stole the store security video tape, but he was observed by witnesses who were able to identify him, leading to his arrest. He acted alone.

1. *Relevance to an issue other than character.* For evidentiary purposes, OCGA § 24-4-401 defines relevance as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Notably, the relevance definition only requires "any tendency" to make a fact more probable or less probable, so the standard is a liberal one.[8]

---

[7] *Green v. State*, 352 Ga. App. 284, 291 (2) (e) (834 SE2d 378) (2019).

[8] See *State v. Jones*, 297 Ga. 156, 159 n. 2 (773 SE2d 170) (2015) ("Regardless of how one views the language of Rule 401 [defining relevance], . . . it is clear that the relevance standard codified therein is a liberal one.").

The State offered the evidence initially to prove "[a]bsence of mistake or accident, intent, knowledge, motive, preparation[,] and plan, as well as opportunity," later focusing its argument on intent and absence of mistake. The evidence showed that Westbrook's involvement was limited to recruiting King to do the robberies, supplying him with a firearm, and acting as a driver — he did not personally enter the stores and steal the money. Based on this, Westbrook argued that King acted of his own accord and that Westbrook was both ignorant of King's plan and intent to rob the stores when he gave King a ride in his vehicle, and Westbrook testified that he was intimidated by the fact that King had a gun: "you can fight a man, but you can't beat a bullet." Therefore, Westbrook's motive and intent in giving King a ride were squarely at issue in the trial, and the earlier armed robbery required a comparable intent to rob that Westbrook was accused of having in this case.[9] Therefore, the State met its burden to show a permissible purpose for admitting the 2000 conviction other than Westbrook's character.[10]

_____

[9] See *United States v. Lockhart*, 731 Fed. Appx. 842, 845 (I) (B) (Case No. 17-11800, 11th Cir. 2018) (unpublished) ("a 'mere presence' defense puts knowledge and intent at issue").

[10] See *Sloan v. State*, 351 Ga. App. 199, 209 (2) (e) (i) (830 SE2d 571) (2019).

2. *Probative value is not substantially outweighed by undue prejudice.*
Weighing the relative probative value and undue prejudice

> must be done on a case-by-case basis and requires a common sense
> assessment of all the circumstances surrounding the extrinsic act and the
> charged offense. In considering the probative value of evidence offered
> to prove intent, [relevant] circumstances include the prosecutorial need
> for the extrinsic evidence, the overall similarity between the extrinsic act
> and the charged offense, and the temporal remoteness of the other act.[11]

As noted above, there was no evidence that Westbrook himself was the gunman
or robber; rather, the evidence showed that Westbrook's involvement was peripheral,
even if he was a party to the second robbery as the getaway driver.[12] Showing
Westbrook's actual participation, rather than mere presence, was crucial to the State.[13]

---

[11] (Citation and punctuation omitted.) *Kirby*, 304 Ga. at 481 (4) (a).

[12] As noted above, the jury acquitted Westbrook of participation in the first robbery.

[13] Cf. *State v. Watson*, __Ga. App. __ (2) (Case No. A19A2358, decided Mar. 9, 2020) (holding that the trial court did not abuse its discretion in excluding the extrinsic evidence because the defendant was directly involved and the case hinged on identity, not intent: "the State's need to have more evidence to prove motive, intent, and knowledge [becomes] very low because those issues are obvious to a fact finder after the identity of the perpetrator is determined").

Therefore, the State's need for the evidence was not merely a pretextual disguise masking its prejudicial effect:[14]

> The classic situations calling for admissibility of independent crimes or acts to prove intent are when the defendant admits a certain involvement in the criminal incident but maintains he was duped or forced to go along and thus lacked the necessary criminal intent or the defendant admits the charged conduct but claims he did not intend to act criminally.[15]

Although robbing a convenience store at gunpoint is not tantamount to rocket science, familiarity with the commission and planning of the offense certainly renders one less naive about the perpetrator's conduct and demeanor leading up to one. For example, after King committed the first robbery and shot at the clerk, Westbrook proclaimed ignorance about King's conduct and intent when he drove King to a second location to commit the second robbery. The evidence that Westbrook had prior experience with armed robbery, including the shrewdness to steal the store surveillance tape in 1999, is highly probative of his intent as he drove King to the

---

[14] See generally *Williams v. State*, 328 Ga. App. 876, 879-880 (1) (763 SE2d 261) (2014) (The "primary function of [the probative/prejudicial balancing test] is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (punctuation omitted).

[15] *Sloan*, 351 Ga. App. at 209 (2) (e) (i).

8

second location and parked strategically nearby to afford a discreet getaway. The prior robbery shared many of the same traits, including the type of establishment and the type of weapon, and there was little in the execution of the acts that distinguished them from each other, aside from the fact that Westbrook apparently acted alone in the 1999 robbery. That Westbrook in this case acted as the wheelman instead of the gunman does not alter the intent shared by both cases, i.e., to rob the store of its cash. The lack of recency of the 1999 robbery is attenuated by the fact that Westbrook was incarcerated for at least 10 of the intervening 17 years.[16]

With respect to the undue prejudicial effect, the character of the prior offense was the same as the armed robbery in this case, so there was no chance of improperly impugning Westbrook's character with an unrelated offense.[17] Further, "when the evidence of the [2000 conviction] was presented, the jury learned that [Westbrook] had already admitted his guilt and been convicted and served a prison sentence for his [earlier] conduct, making it less likely that the jury would want to punish

_____

[16] See *Kirby*, 304 Ga. at 484 (4) (a) (i) ("[T]he prior crime need not be very recent, especially where a substantial portion of the gap in time occurred while the defendant was incarcerated.").

[17] See generally id. (noting that a prior crime of an entirely different character is more prejudicial).

[Westbrook] for this past conduct rather than the charged crimes."[18] Finally, there was independent, properly admitted evidence that Westbrook was a gang member seeking to recruit others by committing crimes, so evidence that Westbrook had committed another crime was not highly prejudicial, given this record. Accordingly, the trial court was within its discretion to find that the probative value was not substantially outweighed by undue prejudicial effect.

3. *Proof that Westbrook committed the extrinsic acts*. Westbrook does not challenge the existence of his prior conviction, which was proved by a certified copy and testimony from the arresting officer. Thus, the State met this element of the Rule 404 (b) analysis.

In sum, based on the record before us, including the State's need to prove the intent and purpose of Westbrook's conduct in light of his defense claiming mere presence at the scene, we discern no basis for reversal.

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[18] Id. at 485 (4) (a) (i).